```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/14/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Republic of Turkey,

                Plaintiff,

-against-

Christie's, Inc., et al.,

                Defendants.

1:17-cv-03086 (AJN) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Before the Court is a Letter Motion by Defendants, Christie's, Inc. ("Christie's") and Michael Steinhardt ("Steinhardt") (collectively, the "Defendants"), for a protective order prohibiting Plaintiff, the Republic of Turkey (the "Republic" or "Plaintiff"), from pursuing certain deposition testimony, documents and written discovery from Steinhardt, his wife and his employee regarding Steinhardt's experience and practices in acquiring antiquities. (*See* ECF No. 100.) For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Letter-Motion.

**BACKGROUND**

This is an action by the Republic to recover an Anatolian Kiliya-Type Idol (the "Idol"), an extremely rare artifact currently in the possession of Christie's, which the Republic contends was illicitly removed from the Republic. (Compl., ECF No. 1, ¶¶ 1-3.) This action was commenced on April 27, 2017 in advance of a planned sale of the Idol at an auction to be held at Christie's on April 28, 2017. (*Id*. ¶ 3.) The Complaint asserted claims for replevin, conversion and injunctive and declaratory relief. (*Id*. ¶¶ 23-46.) District Judge Nathan denied the Republic's motion for a

temporary restraining order to enjoin the sale, but Christie's agreed to delay for 60 days the receipt of funds by any successful bidder; to retain possession of the object for 60 days; and to announce orally in advance of the auction that the Republic had asserted a claim of ownership with respect to the Idol. (4/27/17 Hearing Tr., ECF No. 18, at 46-47.)

An Amended Complaint was filed on May 26, 2017, in substance asserting the same claims as were asserted in the Complaint, but adding the Idol as "Defendant-in-rem." (Am. Compl., ECF No. 24.) Also on May 26, 2017, the Republic filed a motion for a preliminary injunction seeking to enjoin Defendants from selling, transferring, pledging or otherwise alienating or disposing of the Idol, and requiring maintenance of the Idol until further Order of the Court. (*See* ECF Nos. 26-30.) The parties thereafter agreed to the terms of a Stipulated Order, approved by the Court on June 21, 2017, with regard to the preliminary injunction motion. (ECF No. 46.) The Stipulated Order stated that Christie's informed the Republic that Steinhardt was the consigner of the Idol and that an unidentified winning bidder at the previously held auction (the "Bidder") no longer intended to consummate the purchase of the Idol. The Stipulated Order also provided that Christie's retain possession of the Idol and would not sell or otherwise dispose of it, except upon certain agreed terms. (*Id*.)

On June 23, 2017, Plaintiff moved to compel Christie's to disclose the name and contact information of the Bidder.[1] (Pl's. Letter Mot. to Compel, ECF No. 47.) Christie's and the Bidder opposed the motion, arguing (among other things) that the Bidder did not have relevant information. (*See* ECF Nos. 51-54.) After recognizing the broad scope of discovery, Judge Nathan

---

[1] The Bidder, using the pseudonym John Poe, moved to intervene in the action, which motion was granted by the Court for the limited purpose of opposing the motion to compel.

2

granted the Republic's motion to compel, but ordered that certain safeguards be imposed by way of an appropriate protective order. *Republic of Turkey v. Christie's Inc.*, 17-CV-3086 (AJN), 2017 WL 3206334 (S.D.N.Y. July 26, 2017).

A Second Amended Complaint ("SAC") was filed on July 27, 2017.[2] The SAC replaces the "John Doe" defendants (who had been designated as unknown consignors) with Steinhardt, the actual consignor, who is a member of Christie's American Advisory Board. (SAC, ECF No. 65, ¶ 5.) The SAC contains allegations regarding Steinhardt's acquisition of the Idol from Merrin Gallery on August 16, 1993,[3] and that he "knew or should have known at the time that the Idol had been looted from Turkey." (*Id*. ¶¶ 22-23.) The SAC alleges that "Steinhardt has been involved with several high profile cases involving looted antiquities." (*Id*. ¶ 24.) The SAC also contains quotes from Steinhardt from a 2006 *Forbes* article, stating that ancient art "has been under a cloud because of issues of provenance, which have made headlines in the last five-to-10 years and continue to make headlines." (*Id*. ¶ 25.)

On August 28, 2017, Defendants moved to dismiss the SAC, arguing that Plaintiff's delay of more than twenty years in making a known claim is unreasonable and that the SAC should be dismissed under a statute of limitations defense. (Defs'. Mem., ECF No. 75, at 12-15.) They also argued that the Plaintiff's delay of more than fifty years violated the doctrine of laches. (*Id*. at 15-21.) By Order dated May 8, 2018, Judge Nathan denied Defendants' motion to dismiss the Second

---

[2] The Republic made a motion for leave to file this second amendment (ECF No. 48), Christie's did not oppose the motion (ECF No. 59), and the Court granted the motion (ECF No. 62).

[3] The SAC alleges that in or about the early 1960s the Idol was acquired by Alastair Bradley Martin and Edith Martin (the "Martins") from the gallery of John J. Klejman ("Klejman"), and that the Martins consigned the Idol to the Merrin Gallery in or about 1993. (SAC ¶¶ 15, 17.) The SAC further alleges that Klejman was a "dealer-smuggler" of stolen antiquities (*id*. ¶ 15), but during oral argument, Defendants disputed this characterization.

3

Amended Complaint, holding that Defendants could raise their statute of limitations and laches defenses at the summary judgment stage, if appropriate. (*See* ECF No. 101.)

On their instant protective order motion, Defendants seek to limit "the scope of discovery from Defendant Steinhardt, including from his employee, Ms. Leonardo and his wife," to the following information and documents: "Mr. Steinhardt's purchase of and attempt to sell the Idol, his possession of the Idol, the general policies he followed before [his] 1993 acquisition and his acquisition of Anatolian antiquities before 1993."[4] (*See* ECF No. 100, at 1, 3.) During oral argument, Defendants stated that this limitation was needed because the Republic was seeking discovery regarding each of the over 1000 antiquity transactions in which Steinhardt engaged. The Republic argues that no such limitations are necessary or appropriate, asserting that "Steinhardt's habits and practices with respect to antiquities acquired both before and after 1993, and any changes in those habits or practices, are relevant to his vigilance or lack thereof when he acquired the Idol." (*See* ECF No. 102, at 3.)

Oral argument was held by telephone on May 14, 2018.

## DISCUSSION

**I.      Legal Standard**

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "Rule 26(c) confers broad discretion

---

[4] During oral argument, Defendants stated that Steinhardt had engaged in ten transactions in Anatolian antiquities before 1993.

4

on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The burden of showing good cause for the issuance of a protective order falls on the party seeking the order. *See Brown v. Astoria Fed. Sav. & Loan Ass'n*, 444 Fed. Appx. 504, 505 (2d Cir. 2011). "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 356 (D. Conn. 2006) (citations and quotation marks omitted).

In the present case, Defendants are seeking a protective order to limit the scope of discovery sought by the Plaintiff. Rule 26 of the Federal Rules of Civil Procedure defines the scope of permissible discovery as follows: "Unless otherwise limited by court order . . .: [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**II.     Application**

The Court in its discretion finds that Defendants have not met their burden to show good cause why a protective order of the broad scope that they request should be entered. Much of the discovery sought by the Republic seems appropriate. The SAC contains allegations regarding Steinhardt's involvement with looted antiquities and his knowledge regarding the provenance of

ancient art. (SAC ¶¶ 24-25.) Moreover, as Judge Nathan held in her prior discovery opinion in this very case:

> [T]he Republic is correct that some cases have held that the vigilance of a defendant can be relevant to the availability of a laches defense. *See Solomon R. Guggenheim Found, v. Lubell*, 153 A.D.2d 143, 152 (N.Y. App. Div. 1st Dep't 1990), *aff'd*, 77 N.Y.2d 311 (1991) ("We comment on this argument only to point up that defendant's vigilance is as much in issue as plaintiff's diligence, which is another reason why we characterize the defense urged here as laches. The reasonableness of both parties must be considered and weighed."). Although Christie's argues that some, if not all, of the Republic's likely arguments as to vigilance rely on speculation and conjecture, . . . the Republic has the right to use reasonable avenues of discovery to attempt to build this argument before the Court rejects it as insufficiently developed. *See Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) ("Discovery rules 'are to be accorded a broad and liberal treatment [ ] to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark.'") (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 115 (1964)).

*Republic of Turkey*, 2017 WL 3206334, at *3.

Steinhardt is no stranger to trading in antiquities and the risks associated therewith. Indeed, he has been involved in litigation regarding such issues. For example, Steinhardt was the claimant in a lawsuit in this Court, *United States v. An Antique Platter of Gold*, 991 F. Supp. 222 (S.D.N.Y. 1997) *aff'd*, 1854 F.3d 131 (2d Cir. 1999), which involved a 4th Century B.C. antique gold platter of Sicilian origin that was alleged to have been stolen, and was found to have been subject to forfeiture. The decision in *Antique Platter of Gold* notes that the art dealer who sold the gold platter to Steinhardt in 1991 previously sold 20 to 30 objects to him, totaling $4 to $6 million in sales. 991 F. Supp. at 224. In the circumstances, the reasonableness of Steinhardt in purchasing the Idol in 1993 can be called into question by this evidence.

With respect to proportionality, the Court notes that the Idol is alleged be "an integral and invaluable part of the artistic and cultural patrimony of the Republic." (SAC ¶¶ 3, 11.) The

6

Republic refers to the Idol as "priceless," and notes that the Bidder's winning bid was in excess of $14 million. (Pl. Mem. in Resp. to Poe Motion to Intervene, ECF No. 55, at 9-10.) Furthermore, Steinhardt appears to have adequate resources to provide the discovery requested. Nevertheless, the Court finds in its discretion that some temporal limitation on the scope of discovery is appropriate. *See M&T Mortgage Corp. v. Miller*, No. 02-CV-5410 (NG) (MDG), 2007 WL 3534781, *3 (E.D.N.Y. Nov. 13, 2007) (imposing temporal limitation on pattern and practice discovery).

The Republic argues that Steinhardt's "habits and practices" with respect to antiquities transactions even after his 1993 acquisition of the Idol are relevant. However, the Court finds in its discretion that the further away in time one gets from 1993, the burden and/or expense of the proposed discovery outweighs its likely benefit. Thus, discovery shall be limited to Steinhardt's antiquities transactions up to and including December 31, 2006 (which is the year that Steinhardt made comments to *Forbes* regarding antiquities transactions, and about thirteen years after the subject acquisition), with two caveats. Regardless of time period, discovery shall be provided by Defendants regarding: (1) any transactions by Steinhardt in Anatolian antiquities; and (2) any antiquities transactions by Steinhardt which involve Klejman.

Defendants express concern that the Republic is seeking discovery concerning other objects in Steinhardt's collection "to serve as ammunition for further claims," based upon "Plaintiff's repeated entreaties that documents and testimony in this action not be designated as confidential under the Protective Order." (Def. Ltr., ECF No. 100, at 3.) To address this concern, the Court orders that documents and information produced by Steinhardt, his wife and his employee, Ms. Leonardo, that are designated by Defendants as "confidential" and which relate

to antiquity transactions (other than transactions involving the Idol) shall be subject to the terms of the Stipulated Protective Order Governing the Production and Exchange of Confidential Information in this action (ECF No. 78), and can only be used in this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Letter-Motion. Discovery shall be limited to Steinhardt's antiquities transactions up to and including December 31, 2006, <u>provided</u>, <u>however</u>, that regardless of time period, discovery shall be provided by Defendants regarding: (1) any transactions by Steinhardt in Anatolian antiquities; and (2) any antiquities transactions by Steinhardt which involve Klejman.

Dated: New York, New York
May 14, 2018

SO ORDERED.

_____
**STEWART D. AARON**
**United States Magistrate Judge**