USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/9/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Republic of Turkey,

                Plaintiff,

-against-

Christie's, Inc., et al.,

                Defendants.

1:17-cv-03086 (AJN) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Before the Court is a Letter-Motion (ECF No. 123) by Plaintiff, the Republic of Turkey (the "Republic" or "Plaintiff"), seeking a stay of discovery on the tortious interference counterclaims asserted by the defendants, Christie's, Inc. ("Christie's") and Michael Steinhardt ("Steinhardt") (collectively, the "Defendants"), pending the District Court's decision on Plaintiff's motion to dismiss those counterclaims.[1] For the following reasons, the Court DENIES Plaintiff's Letter-Motion.

**BACKGROUND**

This is an action by the Republic to recover an Anatolian Kiliya-Type Idol (the "Idol"), an extremely rare artifact currently in the possession of Christie's, which the Republic contends was illicitly removed from the Republic. (Compl., ECF No. 1, ¶¶ 1-3.) This action was commenced on April 27, 2017 in advance of a planned sale of the Idol at an auction to be held by Christie's on April 28, 2017. (*Id.* at ¶ 3.) The Republic's operative pleading, the Second Amended Complaint, filed on July 27, 2017, seeks a declaration that all right, title and interest in and to the Idol is

---

[1] While the Letter-Motion to stay discovery was filed on July 2, 2018, the motion to dismiss Defendants' tortious interference counterclaims was not filed until July 6, 2018. (*See* ECF No. 124.)

vested in the Republic, and also asserts claims against Defendants for replevin and conversion. (ECF No. 65, ¶¶ 37-53.)

On June 29, 2018, Defendants filed their First Amended Verified Counterclaims ("Amended Counterclaims"). (ECF No. 122.) Count I of the Amended Counterclaims is brought by Steinhardt and seeks a declaration that Steinhardt is the rightful owner of the Idol and thus is entitled to immediate possession of the Idol. (*Id*. at ¶¶ 45-49.) Counts II and III of the Amended Counterclaims, which are brought by both Defendants, assert claims for tortious interference with contract and, in the alternative, tortious interference with prospective economic advantage. (*Id*. at ¶¶ 50-77.) The gist of Counts II and III is that, due to: (1) the allegedly "baseless allegations" made by the Republic in this lawsuit that it "owns the Idol," (2) the Republic's "acts of intimidation,"[2] and (3) the Republic's "pursuit of the identity of the winning bidder ('High Bidder') at the auction," the High Bidder "withdrew [his] bid and declined to purchase the Idol," thus causing damage to Steinhardt and Christie's. (*See id*. at ¶¶ 4, 40-41, 61-62, 74-75.)

Under a Revised Scheduling Order entered on June 4, 2018, the deadline for the parties to provide written discovery on the amended counterclaims is July 10, 2018. (ECF No. 112, at 2.) By the instant motion, which was filed by the Republic on July 2, 2018, the Republic seeks a stay of discovery as to Counts II and III of the Amended Counterclaims, pending the District Court's decision on the Republic's recently-filed motion to dismiss those counterclaims. (Pl's. Letter-Motion, ECF No. 123.) The Republic asserts that it "should not be subjected to discovery on [the]

---

[2] The Republic's "acts of intimidation" included publishing a full-page advertisement in *The New York Times*, instigating a demonstration at the time of sale and making a statement about the Idol as having been "abducted." (*Id.* at ¶¶ 32-33.)

scandalous and unfounded allegations [contained in Counts II and III] unless and until the Republic's motion to dismiss is denied." (*Id*. at 1.)

Christie's and Steinhardt oppose the Republic's motion. They assert that the Republic has failed to establish good cause supporting its request to stay discovery, and that the burden of such discovery is minimal. (Defs'. 7/6/18 Letter, ECF No. 127, at 1, 3.) The Republic submitted a reply letter in further support of its Letter-Motion on July 9, which the Court also has considered. (Pl's. 7/9/18 Letter, ECF No. 128.)

## DISCUSSION

I. **Legal Standards**

Federal Rule of Civil Procedure 26(c) allows a court, for "good cause" and in favor of "any person from whom discovery is sought," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). "[U]pon a showing of good cause a district court has considerable discretion to stay discovery" pursuant to Rule 26(c). *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (citation and quotation marks omitted). The burden of showing good cause for the issuance of a protective order falls on the party seeking the order. *See Brown v. Astoria Fed. Sav. & Loan Ass'n*, 444 F. Appx. 504, 505 (2d Cir. 2011). "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 356 (D. Conn. 2006) (citations and quotation marks omitted).

"[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Hong Leong Fin. Ltd. (Singapore)*, 297 F.R.D. at 72 (citation omitted). "[A] court

3

determining whether to grant a stay of discovery pending a motion must look to the particular circumstances and posture of each case." *Id*. (citation omitted). "Courts should consider multiple factors, including the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay." *Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*, No. 3:13-CV-00509 (VLB), 2014 WL 3895923, at *3 (D. Conn. Aug. 8, 2014) (citations omitted).

II. **Application**

The Court in its discretion finds that the Republic has not met its burden to show good cause why a protective order should be granted. The Republic does not complain about the scope of the discovery sought on Counts II and III of the Amended Counterclaims. Nor does the Republic complain about any burden. Rather, the Republic refers to the discovery on these Counts as being "limited." (Pl's. Letter-Motion, at 3.)

The two principal bases for the Republic's motion for a stay are that the allegations in the Amended Counterclaims are "spurious and scandalous," and that the Republic has "shown substantial arguments for dismissal." (*Id*.) Even assuming that the existence of "spurious and scandalous" allegations might provide some basis for issuing a stay, which is dubious, the Republic does not appear to be challenging many of the factual bases of the allegations contained in Counts II and III of the Amended Counterclaims. Rather, the Republic is challenging whether the allegations state a claim for tortious interference with contract or prospective economic advantage.

The Court at present is unable to fully assess the strength of the pending motion, since it only recently was filed, and opposition papers are not yet due. Nevertheless, the Court cannot

4

say that Counts II and III on their face are utterly devoid of merit. District Judge Nathan, in a 2014 opinion on which the Republic relies in its motion to dismiss, sets forth the relevant legal principles for claims of tortious interference with contract and tortious interference with prospective business relations:

> In order to state a claim for tortious interference with contract under New York law, a plaintiff must allege: (1) "the existence of a valid contract between the plaintiff and a third party," (2) "defendant's knowledge of the contract," (3) "defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible," (4) "an actual breach" of the contract, and (5) "damages to the plaintiff." . . . In addition, "a plaintiff must show that the third party would not have breached the contract 'but for the activities of the defendant'" . . ., and that the defendant "used 'wrongful means' to induce the third party to breach the contract."
>
> . . .
>
> [L]itigation activity can sometimes satisfy the "wrongful means" element . . . only when (1) "the [defendant] has no belief in the merit of the litigation," or (2) the defendant otherwise "institutes or threatens to institute litigation in bad faith, intending only to harass the third parties and not to bring [its] claim to definitive adjudication[.]"
>
> . . .
>
> In order to state a claim for tortious interference with prospective economic relations, a plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." . . . The elements of tortious interference with prospective economic relations are similar to those of tortious interference with contract, except that "the defendant's conduct must be more culpable for a claim of tortious interference with a prospective contract."

*Ace Arts, LLC v. Sony/ATV Music Publishing, LLC*, 56 F. Supp. 3d 436, 450, 452-53 (S.D.N.Y. 2014) (citations omitted).

In the present case, there was a contract and a business relationship between Christie's, on behalf of Steinhardt, and the High Bidder. The Amended Counterclaims allege that the

5

Republic was aware of such contract and relationship. (Am. Countercls. at ¶¶ 52, 67.) Christie's and Steinhardt allege that the Idol had been displayed at the Metropolitan Museum of Art for 50 years, and that they had provenance for the Idol pre-dating the Republic's 1983 antiquities law. (*Id*. at ¶¶ 2, 22.) Further, it is alleged that the Republic was aware as early as 1992 that the Idol was in a New York collection, and that since 1992 the Republic "was repeatedly informed of the presence of the Idol in New York through scholarly presentations and articles known to Turkey's employees and experts." (*Id.* at ¶¶ 19-20.) The Amended Counterclaims also allege that the Republic did not assert any claim to the Idol until "it came up for sale at a major auction house." (*Id*. at ¶ 21.) Finally, it is alleged that, during and after the bidding process, the Republic used "intimidation," for example, through a full-page advertisement in *The New York Times*, through "instigat[ing]" a demonstration at Christie's and through public statements, to interfere with the sale of the Idol. (*Id*. at ¶¶ 31-33.) Assuming the allegations of the Amended Counterclaim are true, which the Court must do in evaluating a motion to dismiss, the District Court could find that a claim for tortious interference is stated.

In the particular circumstances and posture of this case, considering the relevant factors, the Court declines to issue a stay of discovery.

## **CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's motion for a stay of discovery as to Counts II and III of the Amended Counterclaims.

The Clerk of Court is directed to terminate the pending Letter-Motion at ECF No. 123.

Dated: New York, New York
July 9, 2018

**SO ORDERED**.

_____
**STEWART D. AARON**
**United States Magistrate Judge**