**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/20/2018

Republic of Turkey,

                                        Plaintiff,

                -against-

Christie's, Inc., et al.,

                                        Defendants.

1:17-cv-03086 (AJN) (SDA)

<u>OPINION AND ORDER</u>

**STEWART D. AARON, United States Magistrate Judge:**

Before the Court is a Letter Motion (ECF No. 136) by the defendants, Christie's, Inc. ("Christie's") and Michael Steinhardt ("Steinhardt") (collectively, the "Defendants"), seeking to compel Plaintiff, the Republic of Turkey (the "Republic" or "Plaintiff"), to provide amended answers to Defendants' requests for admissions ("RFAs"), to provide additional deposition testimony and to produce documents. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Letter Motion.

<u>**BACKGROUND**</u>

**I.      Claims And Counterclaims Asserted In Lawsuit**

This is an action by the Republic to recover an Anatolian Kiliya-Type Idol (the "Idol"), an extremely rare artifact currently in the possession of Christie's, which the Republic contends was illicitly removed from the Republic. (Compl., ECF No. 1, ¶¶ 1-3.) This action was commenced on April 27, 2017 in advance of a planned sale of the Idol at an auction to be held by Christie's on April 28, 2017. (*Id*. ¶ 3.) The Republic seeks a declaration that all right, title and interest in and to

the Idol is vested in the Republic, and also asserts claims against Defendants for replevin and conversion. (Second Am. Compl., ECF No. 65, ¶¶ 37-53.)

Defendants assert three counterclaims against the Republic. Count I of the Amended Counterclaims is brought by Steinhardt and seeks a declaration that Steinhardt is the rightful owner of the Idol and thus is entitled to immediate possession of the Idol. (Am. Countercls., ECF No. 122, ¶¶ 45-49.) Counts II and III of the Amended Counterclaims, which are brought by both Defendants, assert claims for tortious interference with contract and, in the alternative, tortious interference with prospective economic advantage. (*Id*. ¶¶ 50-77.)

## II.   <u>Dispute Regarding RFAs</u>

On October 22, 2017, Defendants served 145 RFAs on the Republic. (*See* ECF 137-1.) On January 5, 2018, the Republic served its responses and objections to the RFAs. (*See* ECF 136-1.) A meet-and-confer was held by the parties on May 23, 2018 with respect to the RFAs. On August 9, 2018, Defendants moved to compel amended answers to the RFAs. (*See* 8/9/18 Letter Mot., ECF No. 136.) Defendants assert that the Republic has made "hypertechnical" objections to certain definitions. (*Id*. at 1.)

The Republic opposes the Defendants' motion regarding the RFAs. (Pl. 8/14/18 Letter Resp., ECF No. 137.) The Republic asserts that it fairly responded to the substance of the requests and that many of the terms used in the RFAs were vague and ambiguous. (*Id*. at 1-2.)[1]

---

[1] There were two other RFA-related issues raised in Defendants' Letter Motion with respect to the Republic's Letter Motion that will not be addressed in this Opinion and Order, since one is a non-issue and the other has been resolved, as confirmed during oral argument today. <u>First</u>, Defendants assert that twenty-four identified responses to RFAs were answered "on information and belief" without stating that a reasonable inquiry was conducted. (8/9/18 Letter Motion at 1.) However, many of those responses identified by Defendants do not state that they were made "on information and belief." Moreover, the remaining RFA responses (to RFAs 120, 121, 143 & 145) state that a reasonable inquiry was conducted.

III.     **Dispute Regarding Deposition Testimony**

During her deposition, Zeynep Boz, a witness on behalf of the Republic, refused to answer questions regarding settlement negotiations between the Republic and Bowling Green State University ("Bowling Green") for the return of a Roman mosaic. (8/9/18 Letter Mot. at 3.) On August 1, 2018, the parties met and conferred about Ms. Boz's refusal to answer, but no resolution was reached. (*Id*.) Defendants now move to compel Ms. Boz to testify about the Bowling Green settlement negotiations.

The Republic opposes the motion. It states that a settlement protocol with Bowling Green has been reached, but that the settlement has not been concluded. (Pl. 8/14/18 Letter Resp. at 2.) The Republic argues that it "should not be forced to put that settlement in jeopardy by revealing confidential communications of the parties." (*Id*.) The Republic has offered to provide information about the settlement once it has closed. (*Id*.)

IV.     **Dispute Regarding Document Requests**

There are disputes as to five requests made by Defendants to the Republic for the production of documents, which disputes were not resolved during meet-and-confer sessions on May 4 and August 1, 2018, as follows:

1.     "Written instructions to Manisa Museum officials from the Directorate General for Museums and Cultural Property and/or the Combating Illicit Trafficking Unit regarding witness interviews in Kulaksizlar and files to be searched, dated 1989 or later."[2]

---

(See RFA Answers, ECF No. 136-1, at 38, 46.) Thus, there is no dispute as to the identified RFAs. Second, the Republic had objected to certain RFAs where Defendants failed to provide the document that was the subject of the RFA or provide its Bates number. On July 20, 2018, Bates numbers were provided by the Defendants, and the Republic has agreed to serve amended answers to the RFAs where answers were not already supplied, thus resolving this issue.

[2] Defendants assert that the year 1989 was chosen as a start date since that was the year that an article was published in a leading Turkish newspaper regarding the Idol. (Defs.' 8/15/18 Letter at 2.)

As to this request, the Republic asserts that the "written instructions were derived from counsel's instructions for collecting documents for the case," and therefore that they are protected by the attorney-client privilege and the work product doctrine. (Pl.'s 8/14/18 Letter Resp. at 3.) In reply, Defendants argue that "the witness statements are highly suspect" and that the Defendants "need to understand the background of those statements and other recently created documents . . . ." (Defs.' 8/15/18 Letter Reply, ECF No. 138, at 2.)

2.     "Requests to museums from the Directorate General for Museums and Cultural Property and/or the Combating Illicit Trafficking Unit for any other information or documents pertaining to Kiliya-type idols, and museums' responses to those requests, dated 1989 or later."

The Republic asserts that this request is overbroad, unduly burdensome and not proportional to the needs of the case. (Pl.'s 8/14/18 Letter Resp. at 3.) In reply, Defendants argue that "this is a basic request well within the expected scope of discovery." (Defs.' 8/15/18 Letter at 3.)

3.     "Instructions to the Combating Illicit Trafficking Unit employees to research, investigate, or otherwise track museums or collections abroad for antiquities of Anatolian origin, dated 1989 or later."

The Republic objects to this request on the grounds that it is overbroad, unduly burdensome and not proportional to the needs of the case. (Pl.'s 8/14/18 Letter Resp. at 3.) In reply, Defendants argue that this request is relevant to the Republic's diligence, which is a "highly contested issue in this case." (*See* Defs.' 8/15/18 Letter Reply at 3.)

4.     "Both electronic and paper communications from Özgen Açar to the Ministry of Culture and/or Directorate General for Museums and Cultural Property regarding antiquities of Anatolian origin abroad, dated 1989 or later."

In objection to this request, the Republic states that "[t]he Ministry of Culture does not maintain separate files relating to journal articles or communications with journalists. Plaintiff

has already produced all such non-privileged communications and articles in the Ministry files relating to the Idol at issue in this case. The Republic would have to search <u>all</u> of the files of the Ministry and of the Directorate in order to respond to this request." (Pl.'s 8/14/18 Letter Resp. at 3 (emphasis in original).) In reply, the Defendants do not address the burden that would be imposed upon the Republic to comply with this request, but simply argue about the relevance of the documents sought. (*See* Defs.' 8/15/18 Letter Reply at 3.)

5.      "Documents referenced by Dr. Zoroglu at his deposition . . . regarding any emailed or hard copy instructions sent from the Director General's office to Directorate General employees in the Anti-Smuggling Unit to investigate particular collections over the past 50 years."

The Republic argues that this request is overbroad, unduly burdensome and not proportional to the needs of the case. (Pl.'s 8/14/18 Letter Resp. at 3.) In reply, Defendants argue that these instructions are relevant to the Republic's diligence, and should be produced. (*See* Def. 8/15/18 Letter Reply at 3.)

Oral argument with respect to all the discovery disputes was held by telephone on August 20, 2018.

## DISCUSSION

I.      **Legal Standards**

A.      **Scope Of Discovery Generally**

Rule 26 of the Federal Rules of Civil Procedure defines the scope of permissible discovery as follows: "Unless otherwise limited by court order . . .: [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)).

### B.   Requests For Admission

Requests for admission are governed by Rule 36 of the Federal Rules of Civil Procedure, which provides in relevant part as follows: "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1).

Rule 36 is unique among the rules of procedure that govern discovery in federal court. "While the basic purpose of discovery is to elicit facts and information and to obtain production of documents, Rule 36 was not designed for this purpose. Instead, requests for admission are used to establish admission of facts about which there is no real dispute." 7 *Moore's Federal Practice* § 36.02[1] (3d ed. 2013) (footnote omitted). Stated differently, Rule 36 "is intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry." 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2252 (3d ed. 2006) (footnote omitted); *see also Perez v. Miami-Dade County*, 297 F.3d 1255, 1264 (11th Cir. 2002) (citing Wright & Miller § 2252). It has been recognized that Rule 36 can be misused. *See* Wright & Miller § 2252. For example, where requests for admission are not designed to identify and

eliminate matters on which the parties agree, but to seek information as to fundamental disagreement at the heart of the lawsuit, or are unduly burdensome, a court may excuse a party from responding to the requests. *See, e.g.*, *Tamas v. Family Video Movie Club, Inc.*, 301 F.R.D. 346, 347-48 (N.D. Ill. 2014).

Under Rule 36, in responding to a request for admission, the answering party may admit or deny a request or "state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). The rule also provides that the "answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id*.

An answering party also is entitled to assert objections to requests for admission. Fed. R. Civ. P. 36(a)(5). An objection may "be based on vagueness, that is, the respondent cannot answer because the meaning of the request is uncertain." 7 *Moore's Federal Practice* § 36.11[5][c]; *see also Erie Ins. Prop. & Cas. Co. v. Johnson*, 272 F.R.D. 177, 185 (S.D. W. Va. 2010) (objection that request was vague in its use of the term "insureds" was proper).

A party serving a request for admission may move to determine the sufficiency of an answer or objection. "Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6).

### C. Discovery Of Settlement Negotiations

Rule 408 of the Federal Rules of Evidence limits the introduction at trial of evidence regarding settlement negotiations in light of the strong "public policy favoring the compromise

and settlement of disputes." Fed. R. Evid. 408 advisory committee's note (citations omitted). However, Rule 408 does not apply to discovery. *Small v. Nobel Biocare USA, LLC*, 808 F. Supp. 2d 584, 586 (S.D.N.Y. 2011) (citations omitted). Discovery of settlement-related information is governed by Rule 26, and the burden of demonstrating relevance is on the party seeking discovery. *Id*. at 587 (citation omitted); *see also State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CV-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) (confirming that the burden of demonstrating relevance remains on the party seeking discovery even after 2015 amendments to Rule 26).

## II.    Application

### A.    Defendants' Motion To Compel Amended Responses To RFAs

The Court denies Defendants' motion to compel amended responses to RFAs on two grounds. First, before stating its objections to each of the RFAs at issue, the Republic denies each of the RFAs. As such, no amended responses are needed. *See Bernstein v. Principal Life Ins. Co.*, No. 09-CV-4925 (CM) (HBP), 2010 WL 4922093, at *4 (S.D.N.Y. Dec. 2, 2010) (plaintiffs "have denied each of the requests in this group;" "[a]lthough defendant may disagree with these responses, that disagreement does not render the responses inadequate"). Second, the Court finds that the RFAs in dispute are not consonant with the purpose of Rule 36. The RFAs do not seek to establish admission of facts about which there is no real dispute. Rather, they seek information as to fundamental disagreement at the heart of the lawsuit. *See* Wright & Miller § 2252; *Tamas*, 301 F.R.D. at 347. There are discovery devices that can be used to obtain information regarding the disputed issues, *e.g.*, depositions and requests for production of documents.

In addition, the Court addresses below certain objections to the RFAs that it finds to be well founded:

In RFAs 18, 19 and 28, Defendants ask for admissions as to what "Turkey" saw, was aware of or alerted to. (*See* Defs.' Req. for Admissions, ECF 137-1, at 4.) "Turkey" is defined as "the Republic of Turkey." (*Id*. at 2.) The Republic objects to each of these RFAs on the ground that the term "Turkey" is vague and ambiguous. (Pl.'s Resps. & Objs., ECF No. 136-1, at 9, 11.) The Court agrees that in context, the term "Turkey" is vague. As the Republic notes in its opposition, "Turkey" may be understood to include all employees, officials and agents of the Republic. (Pl.'s 8/14/18 Letter Resp. at 1.)

RFAs 59 and 96 refer to "research" of Jürgen Seeher ("Seeher"). (Defs.' Req. for Admissions at 7, 9.) "Research" is not a defined term. The Court agrees that in context, the term "research" is vague. As the Republic notes in its opposition, Seeher's "research" could include all investigations, studies or analyses by this scholar on any subject. (Pl.'s 8/14/18 Letter Resp. at 1.)[3]

**B.**     **Defendants' Motion To Compel Testimony Regarding Settlement Negotiations**

As discussed above, Ms. Boz testified at deposition on behalf of the Republic regarding settlement negotiations with Bowling Green. During oral argument, the Republic stated that it may rely upon the facts associated with the Bowling Green settlement in order to establish the Republic's diligence. As such, information regarding the settlement plainly is relevant to the issues in this case. Thus, the discovery requested regarding the Bowling Green settlement—*i.e.*,

---

[3] The objection to the term "research" in RFA 60 is not well founded since that RFA is limited to Seeher's "research on Kiliya-type idols." (Defs.' Req. for Admissions at 4.) Nevertheless, inasmuch as the Republic already has denied RFA 60, no amended response is required.

deposition testimony by Ms. Boz—is appropriate, *see Small*, 808 F. Supp. 2d at 586, and shall be provided. The confidentiality concerns expressed by the Republic can be addressed by the Republic designating the relevant testimony by Ms. Boz as confidential pursuant to the terms of the Stipulated Protective Order entered in this case. (*See* ECF No. 78.)

###    C.    Defendants' Motion To Compel Production Of Documents

With respect to document discovery, the Court is mindful of an earlier ruling in this case. As Judge Nathan held with respect to the Republic when it was seeking discovery, the Defendants have "the right to use reasonable avenues of discovery to attempt to build" their case. *See Republic of Turkey v. Christie's, Inc.*, No. 17-CV-3086 (AJN), 2017 WL 3206334, at *3 (S.D.N.Y. July 26, 2017). Against that backdrop, the Court addresses each of the document requests at issue separately, as follows:

1.    "Written instructions to Manisa Museum officials from the Directorate General for Museums and Cultural Property and/or the Combating Illicit Trafficking Unit regarding witness interviews in Kulaksizlar and files to be searched, dated 1989 or later."

The Court finds that the attorney-client privilege and work product doctrine protect the instructions that were given by or on behalf of counsel regarding witness interviews in Kulaksizlar and files to be searched. *See In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530-31 (S.D.N.Y. 2015) (attorney-client privilege and work product doctrine protected communications and materials regarding witness interviews). To the extent that Defendants believe that the witness statements provided are "highly suspect" (Defs.' 8/15/18 Letter Reply at 2), Defendants are free to inquire during depositions about how the witness statements were prepared and the contents of the witness statements themselves. Thus, the Court denies Defendants' motion to compel documents in response to this request.

2.      "Requests to museums from the Directorate General for Museums and Cultural Property and/or the Combating Illicit Trafficking Unit for any other information or documents pertaining to Kiliya-type idols, and museums' responses to those requests, dated 1989 or later."

3.      "Instructions to the Combating Illicit Trafficking Unit employees to research, investigate, or otherwise track museums or collections abroad for antiquities of Anatolian origin, dated 1989 or later."

The Court finds that the documents sought by the above two requests are important for Defendants to obtain, as they relate to the Republic's diligence, and are proportional to the needs of the case. Moreover, the Court finds the temporal scope of this request to be reasonable given the fact that in 1989 an article was published in a leading Turkish newspaper regarding the Idol. (*See* Defs.' 8/15/18 Letter Reply at 2.) Thus, the Court grants Defendants' motion to compel production of documents in response to these requests. The Republic shall conduct a reasonable search for responsive hard copy documents in locations where those documents are likely to be found. With respect to electronic documents, the parties shall meet and confer within seven days of the date of this Order as to appropriate search terms and custodians.

4.      "Both electronic and paper communications from Özgen Açar to the Ministry of Culture and/or Directorate General for Museums and Cultural Property regarding antiquities of Anatolian origin abroad, dated 1989 or later."

In objection to this request, the Republic makes particularized statements regarding the burden of complying with this request regarding hard copy documents. The Republic states that separate files are not maintained relating to journal articles or communications with journalists, and that the Republic would need to search all of the files of the Ministry and the Directorate in order to respond to this request. (Pl.'s 8/14/18 Letter Resp. at 3.) In the circumstances, the Court finds that this request, insofar as it relates to hard copy documents, is not proportional to the

needs of the case. Thus, the Court denies Defendants' motion to compel the production of hard copy documents in response to this request.

With respect to electronic communications that are responsive to this request, the parties shall meet and confer within seven days of the date of this Order with respect to appropriate custodians and then search those custodians' electronic files for communications containing the terms "Açar" and "Anatolia*".

5.      "Documents referenced by Dr. Zoroglu at his deposition . . . regarding any emailed or hard copy instructions sent from the Director General's office to Directorate General employees in the Anti-Smuggling Unit to investigate particular collections over the past 50 years."

The Court finds that the documents sought by this request are important for the Defendants to obtain, as they relate to the Republic's diligence. However, due to proportionality concerns, the Court will narrow this request to the period 1989 to the present. Thus, the Court grants Defendants' motion to compel production of documents in response to this request as modified. The Republic shall conduct a reasonable search for responsive hard copy documents in locations where those documents are likely to be found. With respect to electronic documents, the parties shall meet and confer within seven days of the date of this Order as to appropriate search terms and custodians.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion, as set forth below:

1.      The Court DENIES Defendants' motion to compel the Republic to provide amended responses to the RFAs.

2.      The Court GRANTS Defendants' motion to compel Ms. Boz to testify at deposition regarding the Bowling Green settlement, which testimony shall be provided within thirty days of the date of this Order.

3.      The Court GRANTS IN PART Defendants' motion to compel the production of documents. The Republic shall produce the documents set forth below, within thirty days of the date of this Order:

(a) Requests to museums from the Directorate General for Museums and Cultural Property and/or the Combating Illicit Trafficking Unit for any other information or documents pertaining to Kiliya-type idols, and museums' responses to those requests, dated 1989 or later.

(b) Instructions to the Combating Illicit Trafficking Unit employees to research, investigate, or otherwise track museums or collections abroad for antiquities of Anatolian origin, dated 1989 or later.

(c) Electronic communications from Özgen Açar to the Ministry of Culture and/or Directorate General for Museums and Cultural Property regarding antiquities of Anatolian origin abroad, dated 1989 or later

(d) Documents referenced by Dr. Zoroglu at his deposition regarding any emailed or hard copy instructions sent from the Director General's office to Directorate General employees in the Anti-Smuggling Unit to investigate particular collections in or after 1989.

The Clerk of Court is directed to terminate only the pending Letter-Motion at ECF No. 136, and not the pending motions at ECF Nos. 114 and 124.

**SO ORDERED**.

Dated: New York, New York
      August 20, 2018

_____
**STEWART D. AARON**
**United States Magistrate Judge**