UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/22/21

Republic of Turkey,

               Plaintiff,

    –v–

Christie's Inc., et al.,

              Defendants.

17-cv-3086 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    The bench trial in this matter is scheduled to start on April 5, 2021. In advance of trial, the parties have filed a number of motions *in limine*. As discussed at the final pre-trial conference held on March 18, 2021, the Court resolves them as follows.

    The primary issue before the Court is whether Plaintiff Republic of Turkey may submit evidence of other acts undertaken by Defendant Michael Steinhardt. Plaintiff filed a motion *in limine* seeking approval of its use of that evidence, and it also requested in the *in limine* motion that the Court preclude Defendants from bringing a laches defense in light of Steinhardt's allegedly unclean hands. Dkt. No. 326. Plaintiff seeks to introduce the other acts evidence for two purposes: (1) to support its contention that Steinhardt is precluded from asserting a laches defense as a result of his unclean hands, and (2) to rebut a laches defense. *See* Dkt. No. 327 at 1, 2 n.2. Defendants, meanwhile, filed a motion *in limine* seeking in part to exclude that evidence. Dkt. No. 315.

    **I.**    **Other Acts Evidence to Show Unclean Hands**

    For Plaintiff to establish unclean hands in response to the Defendants' laches defense, it must demonstrate that Steinhardt acted unconscionably or in bad faith. The equitable doctrine of

unclean hands is an "ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814 (1945). The misconduct "need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character," and "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim." *Id.* at 815.

Myriad district courts have concluded that a finding of bad faith is required to justify invocation of the unclean hands doctrine. *See Deere & Co. v. MTD Holdings, Inc.,* No. 00-CV-5936 (LMM), 2004 WL 1794507, at *2 (S.D.N.Y. Aug. 11, 2004) ("It is undisputed that an unclean hands defense requires a finding of bad faith."); *Daiwa Special Asset Corp. v. Desnick*, No. 00-CV-3856 (SHS), 2002 WL 1997922, at *12 (S.D.N.Y. Aug. 29, 2002) ("[A]n unclean hands defense requires a finding of bad faith which the Court has declined to do."); *Obabueki v. IBM*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001) (noting that the "unclean hands defense requires a finding of bad faith."). The doctrine is not lightly invoked. "Courts apply the maxim requiring clean hands where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is directly related to the subject matter in litigation and has injured the party attempting to invoke the doctrine." *PenneCom B.V. v. Merrill Lynch & Co., Inc.,* 372 F.3d 488, 493 (2d Cir. 2004).

Any attempt to assert that Steinhardt acted in bad faith when he purchased the Idol in 1993, however, is precluded by the law of the case. In its September 30, 2019 Opinion and Order, the Court concluded that "there is no evidence in the record that Steinhardt is a bad faith possessor." *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 211 (S.D.N.Y. 2019). Its

conclusion allowed the case to go forward, for had the Court concluded that Steinhardt was a bad faith possessor, Plaintiff's claim would have been time-barred. *Id.* The Court reached that conclusion because Plaintiff conceded that Steinhardt was not a bad faith possessor. For example, Plaintiff distinguished one case from the present one on the basis that "there, unlike this case, the defendant was not a good faith purchaser who innocently held the property until demand and refusal." Dkt. No. 389 at 5. Plaintiff also conceded that "there is no allegation nor evidence that Steinhardt converted the Idol at any time prior to his refusal of Plaintiff's April 2017 demand." *Id.* at 6–7. Plaintiff emphasized that "Steinhardt himself claims that he is 'a good faith acquirer' of the Idol and that there is no evidence that he is a 'bad faith acquirer,'" and further noted that Steinhardt had "testified and provided evidence that he purchased and possessed the Idol in good faith, for value and without knowledge that it was stolen." *Id.* Partly as a result of those concessions, the Court concluded that Steinhardt acted in good faith and that the demand and refusal rule applied. *See* Sept. 30, 2019 Decision at 211. At the March 18, 2021 final pretrial conference, Plaintiff again insisted that "[Steinhardt] was a good faith purchaser" and that Plaintiff is "not arguing that he acted in bad faith." *See* March 18, 2021 Tr. at 53:2, 53:23–53:24.

These unambiguous concessions, and the Court's conclusion that Steinhardt was a good faith purchaser, prove dispositive here. The law of the case doctrine stands for the simple proposition that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 953 (2d Cir.1964). It is motivated by "considerations of fairness to the parties, judicial economy, and the societal interest in finality." *United States v. Carr,* 557 F.3d 93, 102 (2d Cir. 2009). The doctrine is applied at the Court's discretion; as Judge

Learned Hand explained, "the 'law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896, 898 (2d Cir. 1924).  Generally "a Court will only revisit its previous decision in instances of 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 646 (S.D.N.Y. 2015) (citation omitted).  This Court's ruling that Steinhardt was a good faith possessor became the law of the case, and so out of fairness to the parties, in the interest of judicial economy, and out of recognition that Plaintiff continues to agree that Steinhardt acted in good faith (or an absence of bad faith at the time of purchase), the Court will not revisit that finding.

In light of the law of the case, Plaintiff is now foreclosed from attempting to show that Steinhardt acted with unclean hands and to introduce the other acts evidence in support of that position.  As explained below, this conclusion is required because of the overlap between the meaning under New York law of, on the one hand, "unclean hands," and, on the other hand, that of "bad faith purchaser."  Since the unclean hands doctrine requires a finding of bad faith or of some unconscionable act, the question is then whether Plaintiff is correct that one can be deemed to have acted with that bad faith having already been determined to have been a "good faith purchaser" for purposes of the statute of limitations.  Plaintiff argues that even though Steinhardt was a good faith purchaser, he acted recklessly in not investigating the provenance of the Idol ahead of time.  *See* March 18, 2021 Tr. at 44:12–44:13, 45:10–45:14, 49:8–49:11.  That argument is at odds with the meaning of a good faith purchaser under New York law and with the unclean hands doctrine.

4

In New York, a person buys goods in good faith if he does so "without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person . . . in the business of selling goods of that kind." N.Y. U.C.C. § 1–201(9). A "higher standard of 'good faith'" applies to merchants and art dealers, and in that context the analysis of whether a party acted in good faith may entail consideration of whether a duty to investigate provenance attaches. *See Davis v. Carroll*, 937 F. Supp. 2d 390, 422–23 (S.D.N.Y. 2013) (citing *Brown v. Mitchell–Innes & Nash, Inc.,* No. 06-CV-7871, 2009 WL 1108526, at *5 (S.D.N.Y. Apr. 24, 2009))); *see also Bakalar v. Vavra*, 819 F. Supp. 2d 293, 306 (S.D.N.Y. 2011), *aff'd*, 500 F. App'x 6 (2d Cir. 2012) (noting that, unlike merchants, ordinary buyers do not have a duty to investigate provenance prior to purchasing an antiquity).

Plaintiff argues that the higher standard of good faith applies. *See* Dkt. No. 344 at 10–11; Dkt. No. 355 at 3 n.3 ("Steinhardt is held to a higher duty of inquiry and diligence in acquiring antiquities."). If Plaintiff were correct that Steinhardt is subject to the heightened standard, that he had a duty to investigate the provenance of the Idol, and that he failed to do so, then Steinhardt would not be a "good faith purchaser" because the higher standard is part of the good faith inquiry. Thus, Plaintiff's concession that Steinhardt was a good faith purchaser leads to two possibilities: The first is that Steinhardt is an ordinary purchaser who had no legal duty to investigate the provenance. *See Graffman*, 1998 WL 55371, at *6 ("The Does are not art dealers and are under no obligation to adhere to commercial standards applicable to art dealers."); *see also Bakalar*, 819 F. Supp. 2d at 306 ("Bakalar, as an ordinary non-merchant purchaser of art, had no obligation to investigate the provenance of the Drawing, and this Court will not saddle him with a greater duty than the law requires."). The second is that Steinhardt was subject to the higher standard that applies to merchants and art dealers and, as a result, he lived up to the

5

heightened expectations of inquiry and diligence. *See Brown*, 2009 WL 1108526, at *5 ("Merchants, as opposed to other purchasers, are held to a higher standard of 'good faith' under the 'buyer in the ordinary course of business' analysis. . . . A merchant, therefore, might be required under the UCC to take additional steps to verify the true owner of a piece of artwork."); *see also Bakalar*, 819 F. Supp. 2d at 306. Plaintiff cites no authority to support the proposition that someone can be held to the good faith standard that applies to ordinary purchasers while also retaining the obligation "to adhere to commercial standards applicable to art dealers," and the Court is aware of none. *Graffman*, 1998 WL 55371, at *6.

Plaintiff's argument thus fails as a matter of law. Plaintiff cannot reconcile its unclean hands argument with the case law that insists that the "unclean hands defense requires a finding of bad faith," in light of the law of the case and its own concessions that there was no bad faith. *Obabueki*, 145 F. Supp. 2d at 401. Nor is it tenable to argue that Steinhardt acted inequitably or that he committed an "unconscionable act" that is directly related to the 1993 purchase of the Idol, since, for the reasons noted above, the Court's determination that Steinhardt acted in good faith precludes the conclusion that he violated a legal duty of diligence. *See PenneCom*, 372 F.3d at 493; *Bakalar*, 819 F. Supp. 2d at 306. At a minimum, Plaintiff's claim does not rise to the level of substantiating an unclean hands defense in the aftermath of its concession that Steinhardt acted in good faith. Thus, Plaintiff is precluded from arguing that Steinhardt has unclean hands due to how he purchased the 1993 Idol. Because the other acts evidence is being offered to corroborate Steinhardt's state of mind in order to establish that he acted with unclean hands in the purchase of the 1993 Idol, it is precluded for the same reason.

Moreover, for the reasons detailed below, even assuming *arguendo* that the unclean hands doctrine were theoretically available to Plaintiff despite its concessions and the Court's

determination that Steinhardt was a good faith purchaser, the Court would still preclude the admission of the other acts evidence under Rules 404(b) and 403 of the Federal Rules of Evidence.

### II.     Other Acts Evidence to Rebut the Laches Defense

Beyond unclean hands, it appears that Plaintiff also seeks to introduce the other acts evidence in general rebuttal to the Defendants' laches defense.  Here too the other acts evidence may be precluded based on the prior finding of absence of bad faith.  But the Court need not decide that question because the other acts evidence must be excluded under Rule 404(b) and 403 of the Federal Rules of Evidence.

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," though "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).  The Second Circuit takes an "inclusionary approach" to such evidence, which allows admission evidence of similar acts for purposes other than to show "the defendant's propensity to commit the act in question," so long as that evidence is relevant and that its probative value is not substantially outweighed by its prejudicial effect. *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (citing *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986).  Even under the inclusionary approach, however, Plaintiff cannot overcome Rule 404(b)'s bar.

Plaintiff posits that the other acts evidence is relevant for showing Steinhardt's "state of mind."  As is made clear by Plaintiff's briefing and by the discussion that took place in the March 18, 2021 conference, however, Plaintiff seeks to rely on this evidence as probative of

7

Steinhardt's "state of mind" in purchasing the Stargazer Idol and to show that Steinhardt acted in accordance with that character when he purchased the Stargazer Idol.  Plaintiff's contention that the other acts evidence is probative of Steinhardt's "state of mind" at the time of his 1993 purchase "amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits—introducing evidence of bad acts to show the defendant's propensity to commit such acts."  *Berkovich*, 922 F.2d at 1022.  Plaintiff explains the relevance of this evidence as tending "to prove Steinhardt's devil-may-care attitude regarding lawful provenance and foreign patrimony laws," Dkt. No. 327 at 12, which the Court concludes falls within the Second Circuit's analysis in *Berkovich*.

Nor would the evidence be admissible to prove Steinhardt's "signature approach to purchasing antiquities" or to prove a "consistency of approach by Steinhardt," as Plaintiff suggests.  Dkt. No. 327 at 13, 16.  To prevail on such a theory, Plaintiff would have to show that these additional incidents shared "'unusual characteristics' with the episode giving rise to this litigation." *Djangmah v. Falcione*, No. 08-CV-4027 (KPF), 2013 WL 6388364, at *10 (S.D.N.Y. Dec. 5, 2013) (quoting *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir. 1978)).  The "unusual characteristics" standard allows evidence of wrongful acts to be admitted in order to "prove other like [acts] by the [defendant] so nearly identical in method as to earmark them as the handiwork of the [defendant].  Here much more is demanded than the mere repeated commission of [acts] of the same class. . . . The device used must be so unusual and distinctive as to be like a signature." *Id.* (quoting *Benedetto,* 571 F.2d at 1249).  Plaintiff does not attempt to establish such "unusual characteristics," and whatever parallels Plaintiff attempts to establish between the other acts and the purchase of the Stargazer Idol fall short of showing any pattern that is "so unusual and distinctive as to be like a signature." *Id.* at *10.  All told, Plaintiff's

efforts to introduce this unrelated evidence to establish Steinhardt's "state of mind" and general attitude toward purchasing antiquities amount to no more than a veiled effort to establish Steinhardt's propensity.

But even if the other act evidence were admissible pursuant to 404(b), the Court would exclude it pursuant to Rule 403 because it is cumulative and would result in numerous trials within the trial as to the circumstances of the other acts.  Rule 403 of the Federal Rules of Evidence allow the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989). Although in a non-jury trial, concerns of prejudice are substantially reduced, Rule 403 is still applicable.  *Cf. Van Alen v. Dominick & Dominick, Inc.*, 560 F.2d 547, 551–52 (2d Cir. 1977) (ruling that "[w]hile ordinarily it may be the more prudent course in a bench trial to admit into evidence doubtfully admissible records [] and testimony based on them," the district court did not act erroneously when it excluded evidence under Rule 403).  In bench trials, this Court will typically allow potentially Rule 403 material into the trial record and take it only for what it may permissibly be considered for.  But what Plaintiff proposes would lead to such a substantial waste of time that the Court cannot allow it.  Plaintiff seeks to introduce myriad evidence and to have multiple government officials testify in order to establish Steinhardt's "state of mind" and to corroborate the evidence that is already in the record—in particular, Steinhardt's deposition testimony from this case.  Authenticating the evidence and then allowing Defendants to cross-examine those officials and make their rebuttal case as to each piece of evidence would take up significant amounts of time and result in multiple side-show trials about

9

the circumstances of the other acts. And, given Plaintiff's contentions regarding the significance of Steinhardt's testimony in *this* case, the effort to introduce additional evidence merely to "corroborate" his deposition testimony runs afoul of Rule 403. That is, even if the evidence were relevant, the Court would still exclude it because its relevance is substantially outweighed by a combination of factors contemplated in Rule 403, including undue delay, wasting time, and needlessly presenting cumulative evidence. As a result, the Court concludes that even if the other act evidence were admissible pursuant to 404(b), the Court would exclude it pursuant to 403.

Finally, in its motion *in limine*, Plaintiff also requests that the Court preclude the Defendants from asserting a laches defense. That motion is denied. The traditional purpose of motions in *limine* "is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Chan,* 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002). To the extent that Plaintiff sought resolution of whether Defendants could assert a laches defense, it should have done so at the summary judgment stage. The Court declines to reach the question in the context of an *in limine* motion, and denies the relief requested, in part, on that basis. *See TVT Recs. v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344–45 (S.D.N.Y. 2003). As to Steinhardt, furthermore, Plaintiff's motion is denied for the separate reason that the law of the case precludes Plaintiff from asserting that Steinhardt had unclean hands when he purchased the Idol.

### III. Conclusion

Plaintiff's motion *in limine* is DENIED in its entirety. For the same reasons as above, Defendants' motion *in limine* to exclude evidence unrelated to Steinhardt's 1993 purchase, or to

10

Christie's 2017 auction, of the Stargazer Idol is granted only as to the other acts evidence. The Court reserves judgment on the other parts of Defendants' motion.

Furthermore, for the reasons stated on the record at the March 18, 2021 conference, the Court DENIES as moot Defendants' motion to exclude entire deposition transcripts, and it reserves judgment on Defendants' motion for a missing witness inference and motion to exclude reputation evidence. The Court also reserves judgment on Defendants' motion to seal.

This resolves Dkt. Nos. 304, 309, 312, 315, 317, 326.

SO ORDERED.

Dated: March 22, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge